UNITED STATES of America, Plaintiff–Appellee,

v.

Cedric A. DUMAS, Jr., and Terence D. Dexter, Defendants–Appellants.

Nos. 95–3075, 95–3607.

United States Court of Appeals, Seventh Circuit.

Argued June 4, 1996.

Decided Aug. 23, 1996.

---

Teresia Jane DePoyster Buck, Robert Anderson (argued), Office of U.S. Atty., Madison, WI, for U.S.

Howard B. Eisenberg, Milwaukee, WI (argued), for Terence D. Dexter.

David G. Stokes, Madison, WI (argued), for Cedric A. Dumas, Jr.

Before BAUER, CUDAHY, and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

Dexter and Dumas appeal the denial of their motions to suppress evidence under the Fourth Amendment. The district court found Dexter and Dumas guilty of possession of cocaine base with intent to distribute and conspiracy to distribute cocaine base, and sentenced Dexter to 188 months and Dumas to 151 months in federal prison. Dexter and Dumas claim that the plastic bag of cocaine base which constituted evidence of their guilt was illegally seized by a state trooper during a traffic stop. They contend that the trooper had no legal basis to stop them. Further, they allege that the trooper detained them unreasonably after the initial purposes of the stop were satisfied. In their motions to suppress, Dexter and Dumas argued that both the cocaine seized during the stop and their subsequent statements to police are fruit of the allegedly unconstitutional stop and detention. The district court denied their motions on the grounds that they had no standing under the Fourth Amendment; that the stop was legal; and that there was no unreasonable detention. Dexter and Dumas appeal the district court's denial.

Because Dexter's Notice of Appeal was filed after the expiration of the Rule 4(b)

time limit, we must dismiss his appeal for lack of jurisdiction. Because the stop and ensuing detention were reasonable under the Fourth Amendment, we affirm the district court's denial of Dumas' motion to suppress.

## Background

At approximately 3:32 a.m. on March 10, 1995, Wisconsin State Trooper Dennis Lewis was patrolling I–94 in Dunn County, Wisconsin. He noticed a maroon van on the highway which was not displaying a license plate. Lewis did not see the temporary registration certificate which was affixed to the inside of the tinted rear window of the van. Lewis pulled the van over in the city of Menomonie. After stopping the van, he got out of his car and approached the van from behind. Although Lewis testified that he "observed a square cardboard with letters on it inside the rear window," he also testified that "[i]t was not visible. The tinted windows obstructed what the writing said." Hearing Tr. at 46; Gov. Exh. 1. Because the writing on the temporary tag was not visible to him, Lewis decided to investigate the matter further. He did not believe it would be safe to stand directly behind the van while checking the temporary registration tag, so he went to the front of the van to speak to the driver.

Lewis asked the driver for a driver's license and vehicle registration. Dumas gave him a driver's license bearing the name "Terence D. Carter" and a rental agreement in lieu of the automobile registration. The agreement was under the name of a woman who was not present in the van, and no additional authorized drivers were listed. Lewis returned to his patrol car, and asked the dispatcher to run a routine check of "Carter's" license. The dispatcher informed Lewis that "Carter" was not legally authorized to drive since his license had been suspended. The dispatcher also gave Lewis a "10–0" warning indicating that the officer should use caution, and alerted Lewis to the fact that there were drug violations in "Carter's" criminal history. Upon receiving this information Lewis called for backup including a drug detection dog.

Lewis returned after a few minutes and explained to Dumas that he was not autho-rized to continue driving in view of "Carter's" suspended license. Lewis then requested a license from the passenger in order to ascertain whether the passenger would be able to take over the driving. Dexter said he had no identification with him, but wrote his name as "Jeffrey Jason Scott" on a piece of paper. Lewis, checking with the dispatcher, discovered that "Scott's" license was also suspended. He also received another "10–0" warning. This license check, like the previous one, took only a few minutes.

Since it appeared that neither man was legally authorized to drive, Lewis returned to the van intending to move the men to his squad car so he could transport them to the nearest town. He asked Dumas to leave the van and escorted him to the squad car. He then repeatedly asked Dexter to get out. When Dexter did not respond, Lewis opened the car door and asked again. Dexter awkwardly began to slide towards the door keeping his feet together. At that point, a one-gallon plastic bag containing what appeared to be cocaine base fell out of the car and onto the highway. The total time elapsed during the stop was approximately 30 minutes.

Dexter and Dumas were then arrested and subsequently made statements to the police. Each was later tried and convicted of one count of possession with intent to distribute cocaine base and one count of conspiracy to distribute cocaine base under 21 U.S.C. §§ 841(a)(1), 846. Before trial both defendants filed motions to suppress the physical evidence as well as their statements. On May 19, 1995, a magistrate judge recommended that their motions to suppress these pieces of evidence be denied. And, on June 1, 1995, Judge Barbara B. Crabb accepted that recommendation and ruled accordingly.

Judgment in Dumas' case was entered on August 22, 1995, and he filed his notice of appeal in a timely fashion on August 29, 1995. Judgment against Dexter was entered on September 25, 1995. Dexter, however, did not file his notice of appeal within ten days, as required by Rule 4(b) of the Federal Rules of Appellate Procedure. Instead, on September 29, 1995, Dexter moved the district court for an extension of time to file the notice of appeal. The district court granted

the extension, citing "counsel's schedule and defendant's responsibilities" as reasons for the failure to file within the Rule 4(b) deadline. Dexter filed his notice of appeal within the additional period allotted by the district court, on October 30, 1995.

## Discussion

### A. Dismissal of Dexter's Appeal

■ According to the Federal Rules of Appellate Procedure, Notices of Appeal must be filed within ten days of final judgment. Fed. R.App. P. 4(b). In criminal cases, an extension of this time period, whether requested before or after the expiration of the ten-day period, may be granted only upon a showing of excusable neglect. The requirement of excusable neglect is jurisdictional. Without such a showing, the time for appeal may not be extended either by agreement of the parties or by the district court. *United States v. Marbley*, 81 F.3d 51, 52 (7th Cir. 1996). See also *Prizevoits v. Indiana Bell Tel. Co.*, 76 F.3d 132, 135 (7th Cir.1996) (same with respect to Rule 4(a) governing civil appeals). As we have previously noted, "although we think Rule 4(b) is ripe for reexamination we are bound by it." *Marbley*, 81 F.3d at 53.

■ "[C]ounsel's schedule and defendant's responsibilities," without further elaboration, are insufficient reasons to support the necessary determination that there was "excusable neglect." "Excusable neglect" requires something more than a simple failure to meet the deadline due to a busy schedule.[1]

■ In a motion to this court, Dexter points out that failure to file a timely appeal constitutes per se ineffective assistance of counsel, unless the negligence of the client is responsible for the late filing. *United States v. Nagib*, 56 F.3d 798, 800–01 (7th Cir.1995). As Dexter correctly argues, such ineffective assistance constitutes a ground for collateral relief under 28 U.S.C. § 2255—relief which may take the form of the district court's vacating the judgment and entering a new one to allow for a timely appeal. *United States v. Mitchell*, 58 F.3d 1221, 1223 (7th Cir.1995). Indeed, we have pointed out that § 2255 motions are likely to follow our Rule 4(b) dismissals in circumstances such as these. *Marbley*, 81 F.3d at 52–53. Dexter asks us to remand the case to allow for such action. Since we are without jurisdiction, we must deny Dexter's motion to remand, and accordingly, Dexter's appeal is dismissed. The refusal of a remand is without consequence, however. In default of a timely notice of appeal, the matter has remained within the jurisdiction of the district court and Dexter remains free to pursue collateral relief there.

### B. Affirmance of Dumas' Appeal

■ We review the district court's legal determinations of reasonable suspicion and probable cause for a warrantless search or seizure de novo. *Ornelas–Ledesma v. United States*, —— U.S. ——, ——, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996). However, we are required to "review findings of historical fact only for clear error and … give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.*

Although the parties (and even the magistrate judge) have paid a good deal of attention to the putative issue of the defendant's standing to challenge the "search" under the Fourth Amendment, these arguments are

---

1. We note that Dexter has not argued that he relied to his detriment on the district court's granting of his motion for an extension (which was filed before the ten-day Rule 4(b) period expired). Thus, the claim has not been made that Dexter failed to file within the ten-day period in reliance on the district court's grant of an extension. We therefore need not decide whether the "unique circumstances" exception to the Rule 4(b) limit is applicable here. See *Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557 (7th Cir.1990) (en banc); *Carlisle v. United States*, —— U.S. ——, ——, 116 S.Ct. 1460, 1467, 134 L.Ed.2d 613 (1996), citing *Thompson v. Immigration and Naturalization Service*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964); *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962); *United States v. Dumont*, 936 F.2d 292 (7th Cir.) ("Thompson protects litigants from the district court's gaffes."), cert. denied 502 U.S. 950, 112 S.Ct. 399, 116 L.Ed.2d 349 (1991); *Hope v. United States*, 43 F.3d 1140 (7th Cir.1994), cert. denied —— U.S. ——, 115 S.Ct. 2558, 132 L.Ed.2d 812 (1995).

misguided. The evidence in question was not obtained through a search of the vehicle. Rather, the evidence fell into plain view during the stop of the vehicle when Dexter was asked to leave the van. Thus the issue at hand is the validity of the Fourth Amendment seizure constituted by the stop and ensuing detention of the *defendants themselves*, rather than by any search of the vehicle.

■ There is a clear distinction between the privacy interests involved in a search and those involved in a seizure of the person. *United States v. Powell*, 929 F.2d 1190, 1195 (7th Cir.), cert. denied 502 U.S. 981, 112 S.Ct. 584, 116 L.Ed.2d 609 (1991). A stop implicates personal privacy interests quite distinct from the possessory or property interests implicated by a search. Thus, whether or not he would have had standing to challenge a search of the rented van, Dumas undoubtedly has standing to challenge the seizure of his own person which occurred in the form of the stop and ensuing detention.

Turning to the substantive question of the propriety of Trooper Lewis' actions leading up to the discovery of the bag of cocaine, we address two basic questions: Did Lewis have reasonable suspicion to justify the initial stop of the vehicle? And, having seen the temporary tag in the rear window, did Lewis continue to have justification for the ensuing brief detention and license check?

■ Lewis' stop was based on a Wisconsin state statute which requires that "the plates shall at all times be maintained in a legible condition and shall be so displayed that they can be readily and distinctly seen and read." Wis. Stat. § 341.15(2). The magistrate judge credited Lewis' testimony that the temporary tag placed behind the tinted window of the van was not legible to him when he stopped the van. Mag. J. Rep. at 12, App. Br. at A–21. The magistrate's report was accepted by the district court, and we defer to the credibility determination of the factfinder. As we have previously held in a case involving a

similar Illinois license plate law, "[t]he driver's failure to display *prominently* a registration sticker, alone, would provide an officer with reasonable suspicion sufficient to justify at the very least an investigatory stop." *United States v. Tipton*, 3 F.3d 1119, 1122 (7th Cir.1993).[2]

Dumas further contends that,' while Lewis may initially have had a valid basis for the stop, once he saw the temporary tag in the back window, the stop should have been terminated. But, this case is analogous to *Tipton*. In that case a trooper also pulled over a vehicle which appeared not to have the required registration tags. As the officer approached the vehicle in that case, he observed what appeared to be a temporary tag that had partially fallen off. We held there that, since the improper display of the registration tag was a violation in and of itself, the officers were "not obliged to abort the stop even if they had noticed the improperly affixed sticker prior to questioning." *Id.* at 1123.

Similarly, in this case, the fact that the tag affixed behind the tinted glass was "illegible" and could not be "readily and distinctly seen and read" constituted a violation. Wis. Stat. § 341.15(2). This case is thus distinguishable from *United States v. McSwain*, 29 F.3d 558 (10th Cir.1994). In that case a trooper pulled a vehicle over to check the expiration date on its *properly displayed* temporary tag. The court there held that, after noting that the tag had not expired, the officer no longer had grounds to continue the stop since there was no violation or suspicion of violation. *Id.* at 561. Here the magistrate judge's factual findings, adopted by the district court, included the fact that, after approaching the van, "Lewis looked at the card but could not tell where it was from or exactly what it was because of the tinted rear window." Mag. J. Rep. at 3. Because Lewis had not yet ascertained whether or not the card was a valid temporary registration, he was authorized to continue his investigation.

---

**2.** Any argument that the stop was invalid as a mere pretext for searching for drugs is foreclosed by the Supreme Court's recent decision in *Whren v. United States*, —— U.S. ——, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). There the Court held that an officer's subjective intention in making a traffic stop is of no consequence for the Fourth Amendment analysis, which turns solely on the objective reasonableness of the stop.

While Dumas may be correct that the temporary tag was displayed as prominently as possible, given the tinted windows of the van,[3] the issue before us is whether Lewis had reasonable suspicion of a violation sufficient for him to continue detaining the defendants even after he saw the tag through the back window of the van.

█ In his reply brief, Dumas also challenges Lewis' request for Dumas' license and registration and the computer check of their validity. Because it was raised only in Dumas' reply brief, this argument has been waived. In any event, while we have recently questioned the constitutional validity of the routine running of computerized *criminal history* checks during traffic stops, we have implicitly recognized that a computer check of license and registration validity is appropriate as a routine measure. See *United States v. Finke*, 85 F.3d 1275, 1279–80 (7th Cir.1996). Dumas has not alleged that anything other than such a standard status check was involved in this case.

█ Once Lewis ascertained that neither Dexter nor Dumas was legally authorized to drive the rental car, he reasonably required them to leave the car so that he could transport them to town to make a phone call. Dumas has not challenged this action. It was while Dexter was getting out of the car that the bag of cocaine fell into plain view on the pavement. Thus, there was no search. Since the stop and detention were justified as a follow-up to the apparent traffic violation, there was no violation of the Fourth Amendment.

## Conclusion

We therefore conclude that, while Dumas had standing to appeal the stop and ensuing detention, his Fourth Amendment rights were not violated since the ensuing brief detention prior to the discovery of the cocaine was justified for investigation of the traffic violation. The district court's denial of Dumas' motion to suppress is therefore AFFIRMED. Dexter's appeal is DISMISSED for lack of jurisdiction.

---

3. At oral argument, counsel for the government was unable to suggest to us any way in which Dexter and Dumas could have displayed their tag so as to comply with the statute short of affixing it to the outside of the window—a seemingly impractical suggestion since the temporary tag is made of paper. The tag on the vehicle involved here was taped to the inside of the back window in a prominent location. Although the issue was not raised in this case, we acknowledge that the validity of a law with which it is impossible to comply may be questioned.