**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Wesley L. DAWN, Defendant–Appellant.**

No. 96–3585.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1997.

Decided Nov. 4, 1997.

Cheryl B. Schacht (argued), Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Bruce J. Rosen, Susan C. Blesener (argued), Pellino, Rosen, Mowris & Kirkhuff, Madison, WI, for Defendant–Appellant.

Before FLAUM, KANNE, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Wesley Dawn pled guilty to charges that he received and possessed a number of films depicting minors engaged in sexually explicit conduct. Dawn had made these films in Honduras, where he worked for several years as a schoolteacher. In view of his role as the creator of the films, the district court in sentencing Dawn cross-referenced the guideline for the production of child pornography, which resulted in a substantially higher sentence. Dawn appeals, contending that sentencing him based on conduct that took place outside of the United States is inappropriate absent explicit confirmation that Congress and the Sentencing Commission meant for the laws and sentencing guidelines relating to child pornography to apply extraterritorially. Dawn was not actually sentenced for production of the films, however; he was convicted on receipt and possession charges alone, and his sentence comports with the statutory minimums and maximums for those offenses. His production of the films was simply factored into the sentence as conduct relevant to the receipt and possession offenses. This was permissible regardless of whether the proscription against producing

child pornography extends beyond the borders of the United States. We therefore affirm Dawn's sentence.

## I.

In July 1995, Dawn dropped off fourteen films for developing at his local grocery store in Spooner, Wisconsin. A film processor conducting a spot check on one of the films noticed that it appeared to contain child pornography, and he notified the police. After reviewing that film, officers obtained an anticipatory search warrant for Dawn's home. In the meantime, the other thirteen films were processed and returned to Dawn, who was told that the fourteenth (now in the hands of the authorities) was missing. Dawn requested a tracer on the "missing" film and was eventually told that it had been located and would be delivered to him directly by the United Parcel Service. Subsequently, a part-time sheriff's deputy posing as a UPS delivery worker brought the film to Dawn at his home. After Dawn signed for the film, the deputy returned with two investigators to execute the search warrant. Dawn cooperated in the search, providing the officers with between seventy and eighty additional films that he acknowledged producing. The subjects of the films, Dawn explained, were street children in Honduras, who had lived with Dawn in his home there while he was employed as a primary school teacher. The FBI referred fourteen of the films[1] to a pediatrician with expertise in child abuse. She estimated that the children involved were between four or five and twelve years of age. They were engaged in various pornographic activities, and Dawn admitted that an adult hand in the films shown fondling the genitalia of a child belonged to him. The films were stored in boxes labeled "Qualex," a company that develops eight millimeter films in Texas and California and ships via interstate commerce to drop off sites around the country, including Wisconsin.

Dawn was ultimately charged in a sixteen-count federal indictment. Counts one through fourteen were based on Dawn's pro-duction of the fourteen films, and charged him with violating 18 U.S.C. § 2251(a), which provides:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (d), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

Count fifteen charged Dawn with receipt of the film delivered to him by the undercover deputy, in violation of 18 U.S.C. § 2252(a)(2), and count sixteen charged him with possessing the fourteen films that he had produced, in violation of 18 U.S.C. § 2252(a)(4)(B). Dawn pled guilty to counts fifteen and sixteen, but stipulated in his plea agreement that he would be sentenced on the basis of all relevant conduct as defined by United States Sentencing Guidelines section 1B1.3. R. 26 at 2. The parties also stipulated that the films were produced entirely in Honduras and then transported by Dawn to the United States, where they were developed. R. 24.

Several Guidelines sections were important at Dawn's sentencing. Section 2G2.2, which pertains to "Trafficking in Material Involving the Sexual Exploitation of a Minor," applied to Dawn's receipt of the film delivered to him by the undercover deputy. It establishes a base offense level of 15 and provides for several enhancements that may have applied to Dawn's conduct. Section 2G2.4 applies to possession of child pornography, and establishes a base offense level of 13, also with several enhancements that may have applied to Dawn's offense. Both sections also pro-

---

1. Whether these were the same fourteen films that Dawn sent for developing in July 1995 is not clear.

vide for cross-referencing to section 2G2.1, the guideline that applies to *production* of child pornography "[i]f the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." U.S.S.G. §§ 2G2.2(c)(1), 2G2.4(c)(1) (Nov.1995). It was in Dawn's interest to avoid the cross-reference, because section 2G2.1 establishes a much higher offense level of 25, and imposes greater enhancements than the other sections.[2]

Overruling Dawn's objections to the cross-reference, the district court applied the production guideline. The base offense level of 25 specified by section 2G2.1(a) was increased by four levels because the offense involved minors under the age of twelve (§2G2.1(b)(1)), and by another two levels because the children Dawn had exploited were under his custody, care, and supervisory control (§2G2.1(b)(2)). The multiple counts provisions of section 2G2.1(c)(1) and section 3D1.4 added five more levels. A three level reduction for acceptance of responsibility (§3E1.1) resulted in a final adjusted offense level of 33. For someone like Dawn with no prior criminal history, the Guidelines specified a sentence of 135 to 168 months. The district court rejected Dawn's request for a downward departure, and ordered Dawn to serve a prison term of 120 months (the statutory maximum) on the receipt charge and a consecutive term of 36 months on the possession charge. *See* U.S.S.G. § 5G1.2(d).

**2.** Guidelines section 2G2.1 would have applied to the conduct charged in counts one through fourteen of the indictment, which were dropped after Dawn pled guilty to counts fifteen and sixteen.

**3.** Dawn also argues that sentencing on the basis of his conduct abroad would violate his due process rights because he lacked notice that he would be held responsible for that conduct. Dawn Br. 16. He has left this argument undeveloped, however, and consequently we need not address it. *See* FED. R.APP. P. 28(a)(6); *see also, e.g., Bratton v. Roadway Package Sys., Inc.,* 77 F.3d 168, 173 n. 1 (7th Cir.1996); *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) (per curiam). In any event, this argument fails for

## II.

Dawn contends that the district court erred in applying the cross-reference to section 2G2.1, because he produced the films outside of the United States. He contends that the guidelines should not be applied to foreign conduct unless Congress or the Sentencing Commission has been explicit about doing so.[3] This is strictly a legal issue, and so our review is de novo. *E.g., United States v. Garcia,* 89 F.3d 362, 366 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 443, 136 L.Ed.2d 340 (1996).

We note at the outset that Dawn's appeal focuses solely on the fact that the pertinent films were produced on foreign soil. He makes no argument that cross-referencing is otherwise improper. As we have mentioned above, the trafficking and possession guidelines both compel cross-referencing to the production guideline when "the offense involved causing, ... [or] permitting ... a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." U.S.S.G. §§ 2G2.2(c)(1), 2G2.4(c)(1).[4] As the government points out, the term "offense" is defined broadly to include not only the offense of conviction (in this case the receipt and possession of the pornography), but also all conduct deemed relevant by section 1B1.3. U.S.S.G. § 1B1.1 (comment.) (n. 1(*l*)). We have no difficulty agreeing that Dawn's exploitation of the minors depicted in the films he subsequently received and possessed would constitute "relevant conduct," and indeed (the extraterritoriality question aside) Dawn does not argue otherwise. *See, e.g.,*

the same reason his companion argument does, for as we explain below, Dawn was neither convicted nor sentenced for his production of the films outside of the country.

**4.** The commentary accompanying the trafficking guideline emphasizes that "[t]he cross-reference in [subsection] (c)(1) is to be construed broadly to include all instances where the offense involved employing, using, persuading, inducing, enticing, coercing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct." U.S.S.G. § 2G2.2 (comment.) (n.3).

U.S.S.G. § 1B1.3(a)(1).[5] So understood, Dawn's receipt and possession offenses without question "involved" the exploitation of minors, bringing into play the cross-reference to the production guideline (section 2G2.1).

■ None of the guidelines we have discussed makes the relevance of the defendant's conduct turn on whether that conduct took place within or without the borders of the United States. The Sentencing Commission's definitions of "offense" and "relevant conduct," as well as the terms of the cross-referencing provisions, focus instead upon the factual and logical relationship between the offense of conviction and the defendant's other acts, wherever they may have occurred. On their face, then, these guidelines would appear to permit (indeed, direct) the sentencing court to consider conduct that culminates in or is otherwise relevant to the offense of conviction, even if that conduct took place in another country. No other guideline specifies differently.[6] Thus, unless some independent principle bars the consideration of foreign acts, the cross-reference was not only permissible, but required. *See United States v. Corbin,* 998 F.2d 1377, 1383 (7th Cir.1993), *cert. denied,* 510 U.S. 1139, 114 S.Ct. 1124, 127 L.Ed.2d 432 (1994).

■ Dawn's claim that the cross-reference was improperly based on conduct that took place outside of this country looks for support to the case law concerning the extra-territorial reach of United States law. Generally speaking, Congress has the authority to apply its laws, including criminal statutes, beyond the territorial boundaries of the United States, to the extent that extraterritorial application is consistent with the principles of international law. *See EEOC v. Arabian American Oil Co.,* 499 U.S. 244, 248, 111 S.Ct. 1227, 1230, 113 L.Ed.2d 274 (1991); *United States v. Bowman,* 260 U.S. 94, 97–98, 43 S.Ct. 39, 41, 67 L.Ed. 149 (1922); *see also* RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES, §§ 402–04 (1987). Notwithstanding that power, "[i]t is a longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" *Arabian American Oil Co.,* 499 U.S. at 248, 111 S.Ct. at 1230 (quoting *Foley Bros v. Filardo,* 336 U.S. 281, 285, 69 S.Ct. 575, 577, 93 L.Ed. 680 (1949)); *see also Sale v. Haitian Centers Council, Inc.,* 509 U.S. 155, 173–75, 113 S.Ct. 2549, 2560, 125 L.Ed.2d ·128 (1993); *Smith v. United States,* 507 U.S. 197, 203–04, 113 S.Ct. 1178, 1182–83, 122 L.Ed.2d 548 (1993). Indeed, *Arabian American* Oil indicates that a statute will be applied to conduct occurring abroad only when to do so comports with "'the *affirmative* intention of the Congress *clearly* expressed.'" 499 U.S. at 248, 111 S.Ct. at 1230 (emphasis supplied) (quoting *Benz v. Compania Naviera Hidalgo, S.A.,* 353 U.S. 138, 147, 77 S.Ct. 699, 704, 1 L.Ed.2d 709 (1957)).[7]

---

5. We consequently need not consider whether there might be some circumstances—for example, an extended period of time between the production of the pornography on the one hand and on the other hand the possession ultimately culminating in the arrest—under which it would be inappropriate to consider the production as conduct relevant to the offense of possession or receipt. *See generally United States v. Sykes,* 7 F.3d 1331, 1336–37 (7th Cir.1993); *United States v. Caicedo,* 937 F.2d 1227, 1236 (7th Cir.1991); *cf. United States v. Robinson,* No. 95–10267–JLT, 1997 WL 136430, *3 (D.Mass. March 7, 1997) (defendant's creation of pornographic photographs not relevant to his subsequent conviction for possession, where photographs were taken years before possession of child pornography was made a federal offense).

6. *But see United States v. Azeem,* 946 F.2d 13, 17 (2d Cir.1991). There the court, taking note of

section 4A1.2(h) (which provides that foreign sentences may not be included in computation of the defendant's criminal history category but may be used as a basis for an upward departure under section 4A1.3) concluded that "foreign crimes" (distribution of cocaine abroad, for example) may not be considered in setting the base offense level because they are not crimes against the United States. *See also United States v. Chunza–Plazas,* 45 F.3d 51, 57–58 (2d Cir.1995). We discuss and distinguish these cases below.

7. *Bowman* recognizes an exception to the presumption against extraterritorial intent for "criminal statutes which are, as a class, not logically dependent on their locality for the government's jurisdiction, but are enacted because of the right of the government to defend itself against obstruction, or fraud wherever perpetrated, especially if committed by its own citizens, officers, or agents." 260 U.S. at 98, 43 S.Ct. at

■ Essentially, Dawn's theory is that because Congress has not made clear a wish for the statute that section 2G2.1 of the Guidelines implements—18 U.S.C. § 2251(a)—to apply extraterritorially, the cross-reference to this production guideline was improper.[8] Two circuits have rejected Dawn's argument on its terms, finding that section 2251(a) (and consequently the corresponding guideline) does reach the conduct of American nationals abroad. *United States v. Harvey*, 2 F.3d 1318, 1326–30 (3d Cir.1993); *United States v. Thomas*, 893 F.2d 1066, 1068–69 (9th Cir.), *cert. denied*, 498 U.S. 826, 111 S.Ct. 80, 112 L.Ed.2d 53 (1990). Dawn contends that the rationale of these cases is faulty to the extent that they impute to Congress an intent for section 2251(a) to apply extraterritorially based on a statute and legislative history that supply little or no confirmation of such an intent. By way of contrast, he points out that the more recently enacted 18 U.S.C. § 2260 expressly proscribes the exploitation of minors abroad to create pornography for importation into the United States and in so doing unmistakably invokes the congressional authority to give domestic laws force beyond the borders of this country.

But whether or not section 2251(a) criminalizes the pornography-related exploitation of minors in foreign countries by American citizens is ultimately immaterial. We would have to confront that question if Dawn had actually been convicted on any of the first fourteen counts of the indictment, which charged him under this statute. But Dawn did not plead guilty to these charges, and they were dismissed. The two charges to which he pled guilty are based on conduct that concededly took place within this country.

■ Dawn's extraterritoriality argument assumes that because he was sentenced *as if* he were convicted for producing the pornography, he was sentenced in fact *for* producing child pornography. This is the fatal flaw in his argument. Time and again, we have been presented with arguments that the Sentencing Guidelines, when they take into account conduct beyond the offense of conviction, deprive the defendant of the panoply of constitutional and other rights associated with criminal trials. Time and again, those arguments have failed. *E.g., United States v. Miner*, 127 F.3d 610, 613–15 (7th Cir.1997) (sentence on perjury conviction calculated using amounts of cocaine defendant received from her supplier, about whom she lied to grand jury); *Corbin*, 998 F.2d at 1382–85 (aggravated assault guideline cross-referenced in ascertaining sentence for weapons

---

41. The Ninth Circuit has concluded that this exception survives *Arabian American Oil* and permits the application of certain statutes beyond U.S. boundaries even in the absence of an affirmative statement of congressional intent for these statutes to apply extraterritorially. *United States v. Vasquez–Velasco*, 15 F.3d 833, 839 n. 4 (9th Cir.1994); *United States v. Felix–Gutierrez*, 940 F.2d 1200, 1204–05 & n. 3 (9th Cir.1991), *cert. denied*, 508 U.S. 906, 113 S.Ct. 2332, 124 L.Ed.2d 244 (1993); *but see Kollias v. D & G Marine Maintenance*, 29 F.3d 67, 71 (2d Cir. 1994), *cert. denied*, 513 U.S. 1146, 115 S.Ct. 1092, 130 L.Ed.2d 1061 (1995).

8. Dawn actually phrases his argument somewhat differently. Analogizing to the cases that address the extraterritorial application of U.S. *statutes*, Dawn suggests that a cross-referencing *guideline* like section 2G2.2(c)(1) or 2G2.4(c)(1) is only properly applied to foreign conduct if it is clear that the Sentencing Commission affirmatively intended for the guideline to reach conduct taking place outside of the United States. We think that framing the argument in this way is misleading for several reasons, however. Extraterritoriality principles limit the United States' ability to hold a party to account legally for conduct that occurred beyond its borders. Yet, the Sentencing Guidelines are not laws in the sense that penal statutes are. As we note below, the Guidelines simply narrow and direct the sentencing court's exercise of discretion in selecting an appropriate sentence for violating a given statute. Thus, Dawn was not haled into court under the authority of any guideline, but for violating two statutes (sections 2252(a)(2) and 2252(a)(4)(B) of the criminal code) which concededly apply to his conduct here in the United States. We recognize, of course, that in cases like this one, where the offense of conviction "involved" conduct that occurred outside of the country, the Guidelines may factor that conduct into the sentencing determination. The Sentencing Commission presumably could, if it wished, adopt an explicit set of rules for that scenario. *Cf.* U.S.S.G. § 4A1.2(h) (consideration of sentences resulting from foreign convictions in computation of criminal history). But in the absence of such a provision, we see no reason why the rules governing extraterritorial application of laws—including the presumption against extraterritoriality—should also constrain the operation of the Sentencing Guidelines.

possession conviction); *United States v. Masters*, 978 F.2d 281, 284–87 (7th Cir.1992) (murder guideline cross-referenced in ascertaining sentence for racketeering conviction), *cert. denied*, 508 U.S. 906, 113 S.Ct. 2333, 124 L.Ed.2d 245 (1993); *United States v. Mason*, 974 F.2d 897, 898–900 (7th Cir.1992) (sexual abuse guideline cross-referenced in ascertaining sentence for weapons possession conviction). The cases make clear that sentencing judges may look to the conduct surrounding the offense of conviction in fashioning an appropriate sentence, regardless· of whether the defendant was ever charged with or convicted of that conduct, and regardless of whether he could be. *See, e.g., United States v. Watts*, —— U.S. ——, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (per curiam) (permissible to consider conduct underlying charges of which defendant was acquitted); *United States v. Valenti*, 121 F.3d 327, 334 (7th Cir.1997) (permissible to consider conduct outside of statute of limitations); *United States v. Matthews*, 116 F.3d 305, 307–08 (7th Cir.1997) (same). The lesson of these cases is that taking into account conduct related to the offense of conviction in sentencing is not the same thing as holding the defendant criminally culpable for that conduct. *Watts*, —— U.S. at ——, 117 S.Ct. at 636; *Witte v. United States*, 515 U.S. 389, 401–04, 115 S.Ct. 2199, 2207–08, 132 L.Ed.2d 351 (1995); *see also Matthews*, 116 F.3d at 307. The offense of conviction remains paramount, in terms of both the statutory minimum and maximum punishments and what is relevant for sentencing purposes. Indeed, the very purpose of looking to circumstances beyond the offense of conviction is to decide what degree of punishment to impose within the typically broad range authorized by the criminal statute, by determining what a particular defendant actually did. *See Watts*,

—— U.S. at —— –——, 117 S.Ct. at 636–37; *Witte*, 515 U.S. at 401–04, 115 S.Ct. at 2207–08. In this way a felon who uses a gun to commit assault, for example, is punished more harshly than one who simply keeps a gun underneath his mattress for protection, notwithstanding that both are convicted of the same offense. *Corbin*, 998 F.2d at 1385. However much it may look like the defendant is being sentenced for a different offense—and the cross-referencing provisions of the Guidelines often make it appear very much as though he were-he is actually being sentenced solely for the crime or crimes of which he was convicted. *Watts*, —— U.S. at —— –——, 117 S.Ct. at 636–37; *Witte*, 515 U.S. at 401–04, 115 S.Ct. at 2207–08.[9]

Dawn has not been sentenced for producing child pornography simply because the district court cross-referenced the production guideline. The cross-reference merely implements the common sense notion that a receiver or possessor who has manufactured the pornography in his possession is both more culpable and more dangerous than one who has received or possessed the pornography and no more. Correctly understood, Dawn has been sentenced for receiving and possessing the pornography that he produced, in the same way that Willie Corbin, for example, was sentenced for possessing the gun that he used to commit aggravated assault. *See Corbin*, 998 F.2d at 1385. Thus, even if we were to conclude that section 2251(a) did not reach the production of child pornography outside of the United States, that conclusion would pose no obstacle to the cross-reference. Dawn's creation of the films is not pertinent because it may be a crime under the laws of the United States or Honduras; it is relevant because it

---

9. Dawn's challenge to the cross-reference is reminiscent of an argument we rejected in *Mason, supra*. There a defendant convicted of possessing a firearm in violation of 18 U.S.C. § 922(g) was sentenced with reference to the guideline for criminal sexual abuse after the district court determined that the defendant had used the gun to commit forcible rape. The defendant argued that "by enhancing his sentence for rape—a crime of which he was never convicted—the district court essentially tried a rape case over which it 'had no jurisdiction,' thereby violating

his fifth amendment due process rights." 974· F.2d at 898–99. We rejected the notion that the cross-reference amounted to an impermissible attempt to federalize a state crime, however, reasoning that it was consistent with the Sentencing Guidelines' mandate (concededly controversial) to sentence a defendant based on the reality of the circumstances surrounding the offense of conviction. *Id. at* 899–900; *see also United States v. Carroll*, 3 F.3d 98, 103 (4th Cir.1993) (per curiam) (collecting cases).

sheds light on the gravity of his conduct as a receiver and possessor of the films.[10]

As Dawn points out, the Second Circuit has in two cases excluded "foreign crimes" from the realm of relevant conduct, *see United States v. Azeem,* 946 F.2d 13, 17–18 (2d Cir.1991); *United States v. Chunza–Plazas,* 45 F.3d 51, 57–58 (2d Cir.1995); but we do not think our holding today conflicts with this line of authority.[11] In *Azeem,* the conduct in question (distribution of heroin abroad) took place wholly on foreign soil and had no link to the offense of conviction (conspiring to import heroin into the United States) other than being part of the same course of narcotics trafficking. *See* 946 F.2d at 16. In *Chunza–Plazas,* the link was more tenuous: the defendant had committed murder abroad and subsequently fled to the United States, where he was eventually convicted of possessing false immigration documents. *See* 45 F.3d at 57–58. In this case, however, Dawn's exploitation of minors in Honduras created the very pornography that he received and possessed here in the United States. In a literal sense, then, Dawn's domestic offenses were the direct result of his relevant conduct abroad; pragmatically speaking, they are inextricable from one another. *Cf. United States v. Farouil,* 124 F.3d 838, 844–45 (7th Cir.1997) (heroin seized from bags of defendant's accomplice in Belgium properly attributed to defendant where the heroin was des- tined for the United States; *Azeem* and *Chunza–Plazas* distinguished because the foreign acts at issue in those cases "did not affect the United States and were not intended to affect the United States"). Our case would be closer to *Azeem* and *Chunza–Plazas* if, for example, the district court had taken into consideration pornography that the defendant created and left in another country. That scenario is not before us, however, and we need not decide today whether the defendant's acts abroad would appropriately be considered relevant conduct in that instance. To the extent that the Second Circuit's holdings rest on a more generalized concern that the defendant not be penalized for foreign acts that may or may not be legal in the country where they took place (*see Azeem,* 946 F.2d at 17–18; *Chunza–Plazas,* 45 F.3d at 57–58), we take the opportunity to reiterate that Dawn was not sentenced for any "foreign crime." The cross-reference to the production guideline serves simply to recognize the circumstances culminating in his receipt and possession of the pornographic films in the United States and to distinguish him from the defendant who did not personally exploit minors to create the pornography found in his possession in the way that Dawn did.

### III.

Because Dawn produced the child pornography that he pled guilty to receiving and

---

**10.** In that sense, Dawn is situated no differently than the narcotics trafficker whose sentence is enhanced based on her possession of a firearm in connection with the narcotics offense (*see* U.S.S.G. § 2D1.1(b)(1)) without regard to whether possession of the gun, standing alone, was illegal. *See United States v. Corcimiglia,* 967 F.2d 724, 727 (1st Cir.1992). The relevance of the gun in that instance depends not on the legality of owning or possessing a firearm (which will vary from state to state, city to city), but on the gun's nexus to drug trafficking and the increased risk of violence posed by the combination of the two. *See United States v. Carmack,* 100 F.3d 1271, 1280 (7th Cir.1996); U.S.S.G. § 2D1.1 (comment.) (n.3).

**11.** As we noted *supra* at n. 6, the Second Circuit reached this conclusion based on Section 4A1.2(h) of the Guidelines, which provides that sentences resulting from foreign convictions will not be counted in calculation of the defendant's criminal history, but may be considered as a basis for an upward departure from the sentencing range under section 4A1.3. The court in- ferred from this provision that Congress (really, the Sentencing Commission) "has chosen to assign foreign crimes a rather limited role." *Azeem,* 946 F.2d at 17. Having expressly cited foreign convictions as a basis for upward departure, the court reasoned, Congress (again, it is the Sentencing Commission that promulgates the Guidelines) clearly knew how to provide for consideration of foreign crimes if it wished to do so, and having omitted mention of them in describing relevant conduct apparently intended that they not be considered in setting the base offense level. *Id.* We have some reservations with how much our colleagues in the Second Circuit have read into the Guideline provision governing foreign sentences. The focus of the relevant conduct determination, after all, is not on sentences and convictions, but any and all conduct that is related to the offense of conviction. *See, e.g., Matthews,* 116 F.3d at 307. In any event, we believe the instant case to be distinguishable for the reasons that follow.

possessing, the Sentencing Guidelines required that he be sentenced using the production guideline. The fact that Dawn made the films outside of the United States is immaterial for the reasons we have discussed. We conclude, therefore, that the district court applied the Sentencing Guidelines correctly and AFFIRM Dawn's sentence.