151 F.3d 1034
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Kevin M. INABNIT, Defendant-Appellant.
 No. 97-4247.
 United States Court of Appeals, Seventh Circuit.
 Argued June 10, 1998.
Decided June 30, 1998.
 
 Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. No. IP 97-97-CR-01 M/F Larry J. McKinney, Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. FRANK H. EASTERBROOK, Hon. DANIEL A. MANION, Circuit Judges.
 
 ORDER
 
 1
 Kevin M. Inabnit pleaded guilty to one count of being a convicted felon in possession of a firearm in violation of 18 U.S.C. 922(g)(1). Inabnit had previously been convicted of two state felony offenses when he committed the present federal offense. In July 1997, Indianapolis Police Department officers were dispatched to the area of 1049 South State Street on a report of a domestic dispute. After the police had arrived, they were informed that Inabnit and his girlfriend, Kathleen Cherry, who lived together with their three-month-old daughter, had been fighting in the alley behind their house. After the fight, Inabnit went into their house and Cherry went to her mother's house which was down the street. When the police tried to contact Cherry at her mother's house, she refused to cooperate. Later that day, Cherry called the police to notify them that Inabnit had a gun and he was calling her mother's house threatening to kill Cherry and her family. After the police arrived at Inabnit's house, they walked around the back of the house with their guns drawn. An officer knocked on the back door and identified himself as a police officer. A few seconds later Inabnit opened the back door aiming a loaded, semi-automatic assault rifle at the officer. The police officer fired at Inabnit, hitting him in the left arm.
 
 
 2
 The police then conducted a protective sweep of the house and determined that no one was inside. After obtaining a search warrant for the residence, the police uncovered additional firearms including a twelve gauge semi-automatic shotgun loaded with six rounds of ammunition, a .380 semi-automatic pistol loaded with five rounds of ammunition, and a .223 caliber semi-automatic rifle loaded with six rounds of ammunition. The police also found a plastic bag in Inabnit's shorts pocket containing twelve plastic pouches of a brownish material which was later determined to be 2.6237 grams of methamphetamine.
 
 
 3
 At the sentencing hearing, Inabnit testified that Cherry's step-brother, Robert Hooker, and he had been arguing that day and that Hooker came into the house while Inabnit was gone, placing the firearms in the house where the police later found them. Inabnit testified that when he heard the knock on his back door he thought it was Hooker, not the police. He also admitted that he thought the knock might be his neighbors with whom he had previously argued. Inabnit testified that when he answered the door he was holding the firearm to protect himself, but was not pointing the firearm at anyone. He also testified that the methamphetamine that the police found in his pocket was not his. Inabnit admitted that he was aware of the shotgun in his house and did not realize that he could not possess the firearm due to his status as a convicted felon. Cherry also testified at the sentencing hearing stating that she did not see the firearms lying around her house. She testified that her step-brother, Hooker, had brought a shotgun over to sell to Inabnit so they could go hunting.
 
 
 4
 The sentencing judge found that Inabnit's testimony was not credible. The court added a four-level enhancement to Inabnit's base offense level pursuant to U.S.S.G. § 2K2.1(b)(5), finding that Inabnit possessed a firearm in connection with the Indiana felony offense of criminal recklessness. Ind.Code § 35-42-2-2. The district court then sentenced Inabnit to 110 months' imprisonment.
 
 
 5
 On appeal, Inabnit challenges the enhancement of his sentence under § 2K2.1(b)(5). A four-level enhancement under 2K2.1(b)(5) is appropriate "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense...." U.S.S.G. § 2K2.1(b)(5). "Felony offense" means any offense, whether federal, state, or local, that is punishable by imprisonment for over a year, whether or not a criminal charge was brought or a conviction obtained. U.S.S.G. § 2K2.1, comment. (n. 7). Inabnit asserts that he was punished twice for the same conduct, and, therefore, the district court impermissibly double counted. Specifically, Inabnit maintains that the Indiana offense of criminal recklessness is "essentially a misdemeanor" and not a felony as required by § 2K2.1(b)(5). Indiana Code § 35-42-2-2 reads in pertinent part:
 
 
 6
 (b) A person who recklessly, knowingly, or intentionally performs:
 
 
 7
 (1) an act that creates a substantial risk of bodily injury to another person;
 
 
 8
 ............................................................
 
 
 9
 ....................
 
 
 10
 * * *
 
 
 11
 commits criminal recklessness, a Class B misdemeanor. However, the offense is a:
 
 
 12
 * * *
 
 
 13
 (2) Class D felony if it is committed while armed with a deadly weapon.
 
 
 14
 Based on the Indiana statute, Inabnit contends that the conduct required to enhance his sentence under § 2K2.1(b)(5)--criminal recklessness armed with a deadly weapon--is the same conduct as that for which he was convicted under § 922(g). Therefore, Inabnit argues, the district court double counted his conduct of possessing a firearm.
 
 
 15
 Impermissible double counting occurs when the district court imposes two or more upward adjustments within the sentencing guideline range and the adjustments are premised on the same conduct. United States v. Williams, 106 F.3d 1362, 1367 (7th Cir.1997). Here, Inabnit's situation does not involve two sentencing enhancements, but one offense of conviction and one sentencing enhancement. The Indiana felony offense of criminal recklessness was the basis for enhancing Inabnit's punishment and not a separate conviction. See U.S.S.G. § 2K2.1(b)(5), comment. (n. 7).
 
 
 16
 Sentencing courts may consider a broad range of conduct related to the offense of conviction in deciding what degree of punishment should be imposed. 18 U.S.C. § 3661; United States v. Dawn, 129 F.3d 878, 884 (7th Cir.1997). The Supreme Court has explained the "sentencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction." United States v. Watts, 519 U.S. 148, 117 S.Ct. 633, 636, 136 L.Ed.2d 554 (1997). Accordingly, a felon in possession who uses a firearm to commit an assault is punished more harshly than a felon in possession of a firearm who passively possesses the gun. See United States v. Corbin, 998 F.2d 1377, 1385 (7th Cir.1993). The district court punished Inabnit more harshly because he created a substantial risk of bodily injury when he opened the back door of his house and aimed a gun at a police officer.
 
 
 17
 Second, Inabnit maintains that the evidence found by the district court does not support the crime of criminal recklessness because he did not hold the weapon in a position ready to shoot when he answered his back door. The Indiana felony of criminal recklessness requires the reckless, knowing, or intentional performance of an act that creates a substantial risk of bodily harm to another person while armed with a deadly weapon. Al-Saud v. Indiana, 658 N.E.2d 907, 909 (Ind.1995); Ind.Code § 35-42-2-2. Here, the government established and the court found that Inabnit opened the back door of his house and aimed a loaded, semi-automatic assault rifle at a police office after the officer had knocked and announced himself. Specifically, the district court found that it was reasonable for the police officer to believe that Inabnit was pointing the loaded gun at the officer's head and not straight up in the air. The district court then concluded that Inabnit had the "gun pointed at the police officer in a criminally reckless fashion." In addition, the court found Inabnit's testimony that he was not aiming the gun and did not know that a police officer was knocking on the door was not credible. We give special deference to the district court's findings based upon credibility determinations, which "can virtually never be clear error." United States v. Hickok, 77 F.3d 992, 1007 (7th Cir.), cert. denied, 517 U.S. 1200, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996) (citation omitted). Therefore, the district court's findings support the crime of criminal recklessness.
 
 
 18
 Next, Inabnit maintains that the felony offense of criminal recklessness is defeated because he acted in self-defense. Inabnit asserts that he had the limited right to self-defense in his home, especially in light of his fight with Robert Hooker and his history of trouble with his neighbors. However, Inabnit concedes that the totality of the circumstances of this case do not establish self-defense. Although he denies his concession in his reply brief, an argument made for the first time in a reply brief is considered waived. United States v. Beltran, 109 F.3d 365, 371 (7th Cir.1997). Furthermore, Inabnit does not fulfill the elements required in order to establish self-defense. A felon who is charged with the unlawful possession of a firearm may use self-defense if he demonstrates: (1) he was under a present and unlawful threat of death or serious bodily injury; (2) he did not place himself into a situation were he had to engage in criminal activity; (3) he had no legal means of averting the harm; and (4) there was a direct causal link between the criminal action and avoiding the threatened harm. United States v. Elder, 16 F.3d 733, 739 (7th Cir.1994). Even if Inabnit believed the person at the door was Hooker or a hostile neighbor, he could have locked the door or refused to open the door; therefore, a legal means to avert harm existed. Thus, Inabnit's self-defense argument fails.
 
 
 19
 Last, Inabnit asserts that the record does not support the district court's finding that the possession of the methamphetamine, an Indiana felony offense, was "in connection with" his firearm offense under § 2K2.1(b)(5). Although the sentencing judge stated that the firearm was used in connection with both the possession of the methamphetamine and criminal recklessness, the district court clearly relied upon the Indiana felony offense of criminal recklessness as "another felony offense" for purposes of § 2K2.1(b)(5). Thus, Inabnit's argument is without merit.
 
 
 20
 In sum, the district court properly enhanced Inabnit's sentence pursuant to § 2K2.1(b)(5) and did not clearly err in determining Inabnit's sentencing enhancement. See United States v. Wyatt, 102 F.3d 241, 246 (7th Cir.1996), cert. denied, 520 U.S. 1149, 117 S.Ct. 1325, 137 L.Ed.2d 486 (1997). Therefore, the district court judgment is
 
 
 21
 AFFIRMED.