**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Terence D. DEXTER, Defendant– Appellant.**

No. 98–1780.

United States Court of Appeals, Seventh Circuit.

Argued Aug. 4, 1998.

Decided Jan. 20, 1999.

**1122**

Timothy O'Shea (argued), Peggy A. Lautenschlager, Office of United States Attorney, Madison, WI, for Plaintiff–Appellee.

Howard B. Eisenberg · (argued), Milwaukee, WI, for Defendant–Appellant.

Before POSNER, Chief Judge, KANNE and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

Terence D. Dexter together with Cedric A. Dumas was convicted of possession of cocaine base and conspiracy to distribute cocaine base. Dexter appeals the denial of his motion to suppress evidence. He claims that police illegally seized a plastic bag containing the cocaine base during a traffic stop. He also claims that the state trooper who made the stop unreasonably detained him after the initial purpose of the traffic stop had been achieved. Because the trooper did have reasonable suspicion to make the traffic stop and the scope of the trooper's investigation after stopping the van was reasonable, we affirm the district court's decision.

## I. Facts

The facts in this case are set forth in *United States v. Dumas,* 94 F.3d 286, 288 (7th Cir.1996), *cert. denied sub nom., Dexter v. United States,* —— U.S. ——, 117 S.Ct. 1109, 137 L.Ed.2d 311 (1997). For the sake of clarity, we repeat those facts here:

At approximately 3:32 a.m. on March 10, 1995, Wisconsin State Trooper Dennis Lewis was patrolling I–94 in Dunn County, Wisconsin. He noticed a maroon van on the highway which was not displaying a license plate. Lewis did not see the temporary registration certificate which was affixed to the inside of the tinted rear window of the van. Lewis pulled the van over in the city of Menomonie. After stopping the van, he got out of his car and approached the van from behind. ˙ Although Lewis testified that he "observed a square cardboard with letters on it inside the rear window," he also testified that "[i]t was not visible. The tinted windows obstructed what the writing said." Hearing Tr. at 46; Gov. Exh. 1. Because the writing on the temporary tag was not visible to him, Lewis decided to investigate the matter further. He did not believe it would be safe to stand directly behind the van while checking the temporary registration tag, so he went to the front of the van to speak to the driver.

Lewis asked the driver for a driver's license and vehicle registration. Dumas gave him a driver's license bearing the name "Terence D. Carter" and a rental

agreement in lieu of the automobile registration. The agreement was under the name of a woman who was not present in the van, and no additional authorized drivers were listed. Lewis returned to his patrol car, and asked the dispatcher to run a routine check of "Carter's" license. The dispatcher informed Lewis that "Carter" was not legally authorized to drive since his license had been suspended. The dispatcher also gave Lewis a "10-0" warning indicating that the officer should use caution, and alerted Lewis to the fact that there were drug violations in "Carter's" criminal history. Upon receiving this information Lewis called for backup including a drug detection dog.

Lewis returned after a few minutes and explained to Dumas that he was not authorized to continue driving in view of "Carter's" suspended license. Lewis then requested a license from the passenger in order to ascertain whether the passenger would be able to take over the driving. Dexter said he had no identification with him, but wrote his name as "Jeffrey Jason Scott" on a piece of paper. Lewis, checking with the dispatcher, discovered that "Scott's" license was also suspended. He also received another "10-0" warning. This license check, like the previous one, took only a few minutes.

Since it appeared that neither man was legally authorized to drive, Lewis returned to the van intending to move the men to his squad car so he could transport them to the nearest town. He asked Dumas to leave the van and escorted him to the squad car. He then repeatedly asked Dexter to get out. When Dexter did not respond, Lewis opened the car door and asked again. Dexter awkwardly began to slide towards the door keeping his feet together. At that point, a one gallon plastic bag containing what appeared to be cocaine base fell out of the car and onto the highway. The total time elapsed during the stop was approximately 30 minutes. Dexter and Dumas were then arrested and subsequently made statements to the police.

*Id.*

Both Dumas and Dexter were indicted for conspiracy to distribute cocaine base and possession of cocaine base with intent to distribute. Both Dumas and Dexter filed motions to suppress, which a magistrate judge recommended be denied. Dumas filed objections to the magistrate's report, but Dexter did not. The district court adopted the magistrate's recommendation and denied the motions to suppress. Dumas and Dexter were tried together, and a jury found both guilty of both charges. Dexter was sentenced to 188 months' imprisonment followed by five years' supervised release.

Dumas filed a timely notice of appeal, while Dexter's lawyer asked for additional time to file a notice of appeal. The district court extended the time for filing an appeal, and Dexter's lawyer filed a notice of appeal within the extended period. We, however, subsequently determined that Dexter had made an insufficient showing to extend the deadline for filing the notice of appeal and dismissed his appeal. *Id.* at 289. This court reached the merits of Dumas' appeal, finding that Trooper Lewis had reasonable suspicion to stop the van and that Lewis was justified in detaining the occupants to check their licenses. *Id.* at 290–91.

Dexter then filed a § 2255 motion asserting ineffective assistance of counsel in failing to file a timely notice of appeal and in failing to object to the magistrate's report. The district court granted the motion as to the notice of appeal, but found that Dexter's counsel had not been ineffective by not challenging the magistrate's report because Dexter had not been prejudiced by that decision. It concluded that the stop would have been upheld even if Dexter had made the arguments he now wishes to present. The district court vacated Dexter's original conviction and sentence and reentered judgement so that Dexter could bring this direct appeal.

## II. Analysis

Dexter raises two arguments against the validity of the stop. First, he argues that Trooper Lewis had no reasonable suspicion that the vehicle was in violation of Wisconsin law because there was in fact no violation of

the law and, thus, the stop was illegal. In the event that this court finds that there was a violation, Dexter argues that the application of Wisconsin law to him is a denial of due process. Second, Dexter argues that if the stop was proper, the justification for the stop evaporated when Trooper Lewis saw the temporary registration tag and, thus, Dexter's continued detention violated the Fourth Amendment.

 Generally, on review of a motion to suppress, this court examines questions of law de novo and questions of fact for clear error. See United States v. Brown, 133 F.3d 993, 998 (7th Cir.), cert. denied, — U.S. ——, 118 S.Ct. 1824, 140 L.Ed.2d 960 (1998). However, Dexter did not file objections to the magistrate's report recommending denial of the motion to suppress, and, generally, this type of omission waives any challenge to the magistrate's ruling on appeal. See United States v. Brown, 79 F.3d 1499, 1504 (7th Cir.1996). However, this rule is not jurisdictional, id., and the government does not raise the waiver issue. Thus, we will treat Dexter's arguments as if they were not waived.

## A. The Validity of the Initial Stop

 We upheld the validity of the traffic stop at issue here in Dumas. While that decision is not controlling, it is highly persuasive authority for the issues it addressed. We acknowledge that because Dexter was not a party to the merits decision in the original appeal he is not precluded from raising the same arguments anew that were raised by Dumas. See Bagola v. Kindt, 131 F.3d 632, 637 (7th Cir.1997) ("The law of the case doctrine should not be read so rigidly that it precludes a party from raising an argument that it had no prior opportunity to raise."). Dexter's argument in this case against the validity of the stop, however, is a statutory construction argument that was not raised in Dumas.

 Dexter argues that the van in which he was riding was not in violation of the traffic laws at the time Trooper Lewis stopped the van and, therefore, the stop was illegal. The major difficulty with Dexter's argument is that regardless of whether or not he was violating the law, the stop was justified if Trooper Lewis had probable cause to believe a violation had occurred. See Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Trooper Lewis testified that he did not see any license plate or temporary registration tag on the back of the van until after he pulled it over. Thus, as Dexter concedes, the stop was proper unless Lewis' testimony is rejected. The record includes a photo of the back of the car that shows that the temporary registration tag was not easily seen. Dexter does not directly attack Lewis' credibility, but given that we reverse credibility determinations only in the most extreme circumstances, see, e.g., United States v. Emerson, 128 F.3d 557, 560 (7th Cir.1997), there is not sufficient evidence in the record to disturb the district court's credibility determination.

 In any event, Dexter's legal argument is without merit. Dexter's assertion relies on the language of the law Trooper Lewis believed the van was violating, Wis. Stat. § 341.15 ("Display of Registration Plates"), which provides that:

(2) Registration plates shall be attached firmly and rigidly in a horizontal position and conspicuous place. The plates shall at all times be maintained in a legible condition and shall be so displayed that they can be readily and distinctly seen and read. Any peace officer may require the operator of any vehicle on which plates are not properly displayed to display such plates as required by this section.

(3) Any of the following may be required to forfeit not more than $200:

(a) A person who operates a vehicle for which a current registration plate, insert tag, decal or other evidence of registration has been issued without such plate, tag, decal or other evidence of registration being attached to the vehicle, except when such vehicle is being operated pursuant to a temporary operation permit or plate;

(b) A person who operates a vehicle with a registration plate attached in a non-rigid or non-horizontal manner or in

an inconspicuous place so as to make it difficult to see and read the plate;

Wis. Stat. § 341.15(2)-(3)(b). Dexter claims that the use of the term "registration plate" in these subsections does not include "temporary operation permit or plate." He argues that because registration plates are described in Wis. Stat. §§ 341.12–14 and that temporary plates or registration tags are subject to their own requirements in Wis. Stat. § 341.09, the terms are exclusive. However, the statutory scheme belies this argument. First, § 341.09(e) explicitly states that "Sections 341.13 and 341.14 do not apply to plates issued under this subsection," but does not mention the applicability of § 341.15. Moreover, as the district court noted, the specific exclusion of temporary plates from § 341.15(3)(a) suggests that the drafters of the statute intended this section to cover temporary plates and that the lack of exceptions elsewhere suggests that temporary permits must comply with the remainder of § 341.15.

This view is further corroborated by the Wisconsin Department of Transportation regulations relating to temporary plates, which state that "as provided by § 341.15, only a single plate shall be issued per vehicle and shall be attached firmly and rigidly in a horizontal position to the rear of the vehicle." Wis. Admin. Code. Trans. § 132.04. This regulation also provides an additional problem for Dexter, because the van may have been in violation of the regulation as well as the statute.

Given that § 341.15 governs temporary operating permits, whether the plate was placed so that it was "legible" and could be "readily and distinctly seen" is a question of fact. The district court found that this law was violated because the temporary registration tag could not be seen clearly through the tinted glass. Trooper Lewis stated that he could not see the temporary registration tag while he was following the car. Therefore, at that point he had reasonable suspicion to believe he was witnessing a violation, and the initial stop was valid. *See United States v. Tipton*, 3 F.3d 1119, 1122 (7th Cir.1993).

**B. Due Process Attack on § 341.15**

Dexter next argues that if § 341.15 applies to him, the application of the statute to justify a stop is a denial of due process because he could not display the temporary registration tag any more conspicuously than he did. Dexter provides no caselaw to support this argument; therefore, the argument can be considered waived. *See* Fed. R.App. P. 28(a)(6); *United States v. Dawn*, 129 F.3d 878, 881 n. 3 (7th Cir.1997). However, even assuming that the argument is developed enough to avoid waiver, the argument still cannot justify suppression.

While it is true that "the validity of a law with which it is impossible to comply may be questioned," *Dumas*, 94 F.3d at 291 n. 3, the district court correctly noted in response to Dexter's § 2255 motion that the issue here is not whether a conviction for a violation of § 341.15 is proper, but rather, whether an investigatory stop to determine if there was a violation of the law was proper. The van did not comply with § 341.15 because its tinted windows obscured the temporary registration tag. Given that the van was rented, Dexter and Dumas may not have been able to do anything about the tinted windows, but even so, it was the condition of the vehicle that made the temporary registration tag illegible. Most vehicles permit compliance with the statute. The fact that this van's tinted windows made the temporary registration tag unreadable from a normal following distance cannot immunize the vehicle from investigatory stops to determine whether the unreadable temporary registration tag is valid. And, as the government notes, even if the statute was unconstitutional as applied, suppression would not be justified because Trooper Lewis reasonably relied on the statute when he determined that there was a violation. *See Illinois v. Krull*, 480 U.S. 340, 349, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987); *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *United States v. Tipton*, 3 F.3d 1119, 1124 (7th Cir.1993).

**C. Validity of Detaining the Van**

Dexter argues that probable cause for the stop evaporated when Trooper Lewis noticed

the temporary registration tag after he pulled over the car. Lewis indicated that he saw what he presumed was a temporary registration tag on the back window when he approached the driver's side, but that he did not examine it because his practice is never to step behind a stopped vehicle before identifying the occupants of the car and assessing the situation.

After approaching the car for the first time, when Trooper Lewis found that Dumas was driving on a suspended license and determined that the rental agreement did not name either occupant of the van as an authorized driver, Lewis had reasonable suspicion that warranted continuing his investigation. Thus, the question is whether Trooper Lewis exceeded the scope of a permissible investigatory detention when he asked Dumas for his license and registration. This question was decided in favor of the government in Dumas' appeal, see *Dumas*, 94 F.3d at 290–91, and Dexter does not raise any new argument that would indicate that the answer to this question should be different. This court has stated when a vehicle is pulled over, an officer may ask for a driver's license and registration as a routine matter. *See United States v. Finke*, 85 F.3d 1275, 1279–80 (7th Cir.1996). Asking for a vehicle's registration papers is clearly a legitimate way to verify a vehicle's registration status. To sustain Dexter's argument, we would have to determine that Lewis could not ask for proof of registration without first examining the temporary registration permit. The traffic stop occurred in the early morning hours and was on an unlit portion of a rural interstate; Trooper Lewis was not unreasonable in approaching the driver of the car first to observe with whom he was dealing rather than standing behind the car to examine the temporary registration tag. Trooper Lewis' activity after stopping the car, therefore, was reasonable under the circumstances and does not constitute a Fourth Amendment violation.

Dexter suggests that we follow *United States v. McSwain*, 29 F.3d 558 (10th Cir. 1994), a case we distinguished in *Dumas*. Dexter's argument that we should reconsider *McSwain's* applicability to this case is prem-

ised on our accepting his first argument that there was no violation of the law. Because that argument is meritless, there is no need for us to revisit *McSwain*.

In conclusion, the district court properly denied Dexter's motion to suppress.

AFFIRMED.