**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Quincy D. SMITH, Defendant– Appellant.**

**No. 02–3521.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 16, 2003.

Decided Jan. 12, 2004.

K. Tate Chambers, Office of the United States Attorney, Peoria, IL, for Plaintiff–Appellee.

Judith E. Olingy, University of Wisconsin, Madison, WI, for Defendant–Appellant.

Before BAUER, POSNER, and EVANS, Circuit Judges.

## ORDER

After police officers executed a traffic stop of a car driven by Quincy Smith's girlfriend, they searched Smith, the front-seat passenger, and recovered crack concealed beneath his clothing. Smith moved to suppress the crack, but the district court denied his motion. Without benefit of a formal plea agreement, Smith then pleaded guilty to one count of possession with intent to distribute crack, *see* 21 U.S.C. § 841(a)(1), but orally reserved the right to challenge the denial of his motion to suppress. The district court sentenced him to 60 months' imprisonment, five years' supervised release, and a $100 special assessment. Smith now argues that the officers lacked probable cause to stop the vehicle, but in the district court he focused only on the searches following the stop and represented to the court that he did not wish to challenge the initial stop. Because Smith has waived any challenge to the legitimacy of the stop, we affirm.

On the night of January 12, 2002, police officers Larry Hufford and David Dunscomb were patrolling near Buck's Tavern in Rock Island, Illinois. Around midnight a Ford Explorer passed Buck's and the alley where the officers were parked, and they pulled out and followed it. According to Officer Hufford (who was driving the police car), the Explorer had no "registration light" illuminating the rear license plate, and its driver failed to signal 100 feet in advance before turning left. Consequently, the officers pulled over the Explorer.

Ultimately, Officer Hufford directed both Smith and the driver, Annette White, to exit the Explorer and patted them down for weapons. He then asked them to wait with Officer Dunscomb near the back of the Explorer. While Smith and White stood with Dunscomb, Hufford looked into the passenger side of the Explorer. On the seat he noticed "sparkly flakes" that field tested positive for cocaine. Hufford then conducted a more thorough pat-down search of Smith and discovered a rock-like lump in his crotch area. He arrested Smith and took him into the police station for a strip search, which revealed the crack. White, however, was not arrested or taken to the station; instead, officers cited her for having no rear registration light and no proof of insurance and allowed her to leave.

Smith moved to suppress the crack. He argued that Officer Hufford had no reason at all to believe that he was armed, and thus had no articulable suspicion to conduct the first pat-down search. He also maintained that the officers' decision to detain him and search the interior of the Explorer was not reasonably related to the traffic stop, and thus the crack discovered in the second pat-down search was the fruit of an unlawful seizure and search.

At the suppression hearing the court heard testimony from Officer Hufford, Officer Dunscomb, Smith, White, and a mechanic. The mechanic testified that Smith's brother had brought in the Explorer sometime following Smith's arrest, and that only one of two bulbs illuminating the rear license plate was burned out. When Smith called the mechanic to testify, the government objected and explained to the court that Smith's counsel had previously agreed that Smith was not challenging the propriety of the initial traffic stop. The AUSA explained that he did not "see any relevance to whether the rear light worked or not," because "the initial stop is not being contested as unlawful." When the court asked Smith's counsel if he was offering the mechanic's testimony "on the basis of the issue of whether or not the stop was legitimate," counsel did not dispute that the propriety of the stop was not an issue, and instead explained that he was offering the testimony "on the issue of [Hufford's] credibility, his whole testimony." The court thus overruled the objection and allowed the mechanic to testify.

In denying Smith's motion to suppress, the court first discussed the initial stop even after explaining that it was "not an issue really." The court pointed out that it was "interesting" that only one bulb on the Explorer was burned out, but that it was "very possible" that from the officers' vantage point they could have believed that there was no light at all. The court also determined that White's failure to signal 100 feet before she turned provided an independent basis for the stop. Thus, the court concluded that the stop was legitimate based on both the rear registration light and White's failure to signal.

On the issues Smith had raised, the court ultimately credited the officers' testimony that Smith had consented to the initial pat-down search. The court concluded that shortly thereafter Officer Hufford had seen the crack flakes in plain

view on the seat of the Explorer, rendering everything that followed lawful. Smith moved the district court to reconsider its ruling, but the court declined.

On appeal Smith has abandoned his challenges to the first pat-down search, to the search of the Explorer's passenger compartment, and to the subsequent searches that revealed the crack under his clothes. Instead, he argues only that the officers lacked probable cause to believe a traffic violation had been committed when they first pulled over Smith and White, and thus everything flowing from the stop is tainted.

Because Smith never made this argument in the district court, we agree with the government that he has waived it. Waiver is the "intentional relinquishment of a known right," e.g., *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (citation and internal quotations omitted), and unlike forfeiture, which is unintentional and preserves review over plain errors, extinguishes the error and precludes appellate review, e.g., *United States v. Staples*, 202 F.3d 992, 995 (7th Cir.2000).

In the district court Smith repeatedly signaled that he was not interested in challenging the initial stop. First, he did not raise the legality of the stop in his motion to suppress. And at the hearing when he called the mechanic to testify Smith did not dispute the government's claim that he did not want to challenge the stop, and explained that the testimony was instead being offered on the issue of Officer Hufford's overall credibility. And when the parties argued the motion after the witnesses testified, the court's comment that an officer making a "legitimate traffic stop ... has the right to order the passenger out of the car" prompted Smith's counsel to reply that Smith would not be raising "any objection in this case if all the officer did was ask the driver and [Smith], the

passenger, to step out while they completed a traffic arrest." Finally, in his motion seeking reconsideration of the suppression ruling, Smith never mentioned the legitimacy of the initial stop.

In an attempt to avoid the consequences of his position in the district court, Smith argues that his case presents an exception to the waiver doctrine. He claims that because "the legality of the stop was an issue that factored into the denial of the motion to suppress" it was "necessarily ... preserved for appeal." Even if we were persuaded by Smith's argument (which we are not), it would make no difference because we see no error in the district court's conclusion that the officers had probable cause to stop the vehicle.

Smith focuses on the district court's comment that it thought there was probably only one rear registration light burned out when the officers pulled over the Explorer. He claims that if there was only one light burned out, the officers lacked probable cause unless they first determined whether the Explorer's license plate could be seen from 50 feet away, as required by 625 ILCS 5/12–1201(c). But Smith's argument misses the mark because the officers had probable cause for the stop as long as they reasonably believed a violation was being committed, even if their belief turned out to be wrong. *See United States v. Cashman*, 216 F.3d 582, 586–87 (7th Cir.2000) ("The propriety of the traffic stop does not depend on ... whether [defendant] was actually guilty of committing a traffic offense.... The pertinent question instead is whether it was reasonable for [the officer] to *believe* [that a violation had been committed].");  *United States v. Dexter*, 165 F.3d 1120, 1124 (7th Cir.1999) (same). Here, the district court acknowledged the possibility that the officers may have thought that there was no light at all–thus giving them probable

cause for the stop. *See Whren v. United States,* 517 U.S. 806, 819, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Cashman,* 216 F.3d at 587; *Dexter,* 165 F.3d at 1124.

■ We also see no error in the district court's conclusion that White's failure to signal 100 feet before she turned, as required by the Illinois Vehicle Code, provided an independent justification for the traffic stop. Smith points out that the officers never cited White for the signaling violation and that Officer Dunscomb testified that the failure to signal was not the "main reason" the officers stopped the Explorer. But "main reason" or not, the district court believed that the signaling regulation "was in [the officers'] mind[s]" when they pulled White over–this provided grounds for the stop. *See, e.g., Whren,* 517 U.S. at 819, 116 S.Ct. 1769; *United States v. Robinson,* 314 F.3d 905, 907 (7th Cir.2003). And White herself testified at the hearing that she did not signal until "about 50 to 75 feet" before the corner. In sum, Smith's waiver makes his argument on appeal a nonstarter, but even if he had preserved the argument, it would still go nowhere.

AFFIRMED.