HAMILTON, Circuit Judge,
dissenting.
The police violated the Fourth Amendment rights of defendant Johnson and the four other occupants of the car. What happened here was extraordinary. No other court has tolerated such tactics in such a ease. Five officers in two police squad cars seized the passengers of a parked car. They swooped in on the car, parking close beside and behind it, with bright lights shining into it from both directions, opened the doors, pulled all passengers out, and handcuffed them. The passengers were seized before the officers had any sign that one passenger might have a firearm.
The sole basis offered to justify this highly intrusive, even terrifying, “investigatory stop” was a suspected parking vio- *412 lotion! The phenomenon of police seizures for “driving while black” has long been recognized. See, e.g., David A. Harris, Driving While Black and all Other Traffic Offenses: The Supreme Court and Pretextual Traffic Stops, 87 J.Crim. L. & Criminology 544 (1997). In this case, we seem to be taking the further step of enabling police seizures for “parking while black.”
Taking this further step is a mistake not required by existing law, and it runs contrary to the core Fourth Amendment standard of reasonableness. There are two alternate grounds for reversal here. The first and broader is that the rule allowing pretextual traffic stops under the combination of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), should not be extended to mere parking violations where the legal sanction would be only a citation and fine. The second and narrower ground is that even if such an extension is recognized in theory, the police did not have a reasonable basis for this seizure.
On the first, broader question of extending Terry and Whren to allow seizure of a person to investigate a possible parking violation, the Supreme Court has not gone so far. The core Fourth Amendment standard is reasonableness. That’s what drove the balance between privacy and law enforcement in Terry itself. 392 U.S. at 20-21, 88 S.Ct. 1868. Extending Terry and Whren to allow police to use a parking violation as a pretext for seizing a car’s passengers, and then using the occasion to remove them and handcuff them, loses sight of reasonability and proportionality.
Terry of course authorized investigatory stops without a warrant when a police officer has a reasonable suspicion that a person is engaged or is about to engage in crime. The logic of Terry has long been understood to authorize traffic stops to address violations of traffic laws. E.g., Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); see also Rodriguez v. United States, 575 U.S. —, 135 S.Ct. 1609, 1614, 191 L.Ed.2d 492 (2015) (routine traffic stop more analogous to Terry stop than to formal arrest). And since Whren, American constitutional law has allowed police officers to carry out intrusive traffic stops based on the pretext of investigating a moving traffic violation.
This combination of constitutional decisions already enables aggressive and intrusive police tactics. Officers who have probable cause for a trivial traffic violation can stop the car and then order all occupants out of the car, Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), often to frisk them, Arizona v. Johnson, 555 U.S. 323, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009), to inspect the interior of the car visually, Colorado v. Bannister, 449 U.S. 1, 4 n. 3, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980), and often to search at least portions of the vehicle’s interior. Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009); Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Add in the fact that a stop can be justified by an officer’s mistake of either law or fact, Heien v. North Carolina, 574 U.S. —, 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014), and the opportunities for pretextual intrusions on civilians multiply.[1]
*413 So let’s set the stage for this case. It’s just after 7:30 p.m. on January 8, 2014, in a tough neighborhood in Milwaukee. It’s dark, and it’s very cold, during the “Polar Vortex.” The air temperature is about 8 degrees Fahrenheit, with a wind-chill of about 20 degrees below zero. There is about eight inches of snow on the ground. The streets are quiet.
Five police officers are patrolling together in two squad cars. They are part of the Milwaukee Police Department’s Neighborhood Task Force Street Crimes Unit assigned to patrol so-called “hot spots.” As one officer testified, “part of our initiative is to look for smaller infractions and hope that possibly they may lead to bigger and better things.” Tr. 66. Hence the exploitation of Whren.
In search of “bigger and better things,” the officers see a car parked on a side street in front of a liquor store. The motor is running. The officer in 'charge decides this is an opportunity: the car is parked within fifteen feet of a crosswalk. That means the car might be parked illegally! (I’ll overlook the fact that the crosswalk is both unmarked and snow-covered.)
The officer makes a split-second decision. The police cars quickly turn onto the side street and close in on the parked car — one police car pulls up next to and a little in front of the parked car, and the other pulls up right behind it. From both directions, the police light up the parked car with their headlights, spotlights, and flashlights. The five officers get out of their cars and immediately open the car doors and remove and handcuff the passengers. One, defendant Johnson, is unlawfully in possession of a firearm that he had placed on the floor of the car’s interi- or.
The district court found, and I agree, that the car’s passengers were seized the moment the police cars pulled up next to and behind the parked car. From that moment, the passengers could not have felt free to walk away. This was not a reasonable seizure. It cannot be justified as the constitutional equivalent of an officer strolling up to a parked car to see if the driver or passengers are willing to chat. The passengers in the car were seized, and in a sudden and terrifying way.
The government’s theory here is that the suspected parking violation justified the seizure of the passengers. The government sees no difference between this and a suspected traffic violation, so that all the police tactics permitted in a pre-textual traffic stop under Whren can be used when a car might be parked illegally. The Supreme Court has not gone so far, and other relevant case law is sparse.
In United States v. Thornton, 197 F.3d 241 (7th Cir.1999), two officers in a “high crime” neighborhood walked toward a car parked in a no-parking zone. They saw the driver get out of the car with what looked like a police radio scanner. The officers patted down the driver and spotted what looked like a package of a kilogram of cocaine on the floor of the back seat. Citing both Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), and Whren, we affirmed denial of a motion to suppress the evidence found in the car. We reasoned that if the police could simply approach a person on a public street for no reason and could pull over a *414 vehicle for a civil traffic violation, then the officers did not violate the Fourth Amendment by “walking up to Thornton, who was sitting in a car that rested in a spot where it was violating one of Chicago’s parking regulations.” 197 F.3d at 248.
We went on to note, however, that whether “an illegally parked car, a crime-ridden neighborhood, the driver’s sudden exit, and the driver’s possession of a device that was monitoring police radio traffic adds up to sufficient suspicion to justify a Terry stop is a close call.” Id. When the police seized the car and its occupants in this case, they had much less to go on than the police had with that “close call” in Thornton. And the police tactics here were much more intrusive than the officers’ approach in Thornton.
The majority and the district court have found support in United States v. Shields, 789 F.3d 733, 745 (7th Cir.2015), where we treated a parking violation as enough to support an investigatory Terry stop, though the real action in Shields concerned the driver’s decision to flee from the officers. We supported that extension of Terry to a parking citation by citing United States v. Choudhry, 461 F.3d 1097, 1103-04 (9th Cir.2006) (allowing investigatory stop of vehicle in no-stoppingdow-away zone), which cited in turn United States v. Copeland, 321 F.3d 582, 594 (6th Cir.2003) (allowing stop based on parking violation).
These extensions of Terry to suspected parking violations remain few in number and are, I believe, mistaken. An illegally parked car is a far cry from the would-be robbers casing their target in Terry v. Ohio. The officers could only have issued a citation here. In Terry the Supreme Court struck a practical and necessary balance between protecting privacy and allowing effective law enforcement, see 392 U.S. at 20-21, 88 S.Ct. 1868, but it did so in the context of an imminent armed robbery. That balance looks very different where the threat to law and order is a parking violation. The intrusions on privacy and restraints on liberty authorized by Terry are not justifiable to write a parking ticket.
There is a second, narrower ground for reversal here. Even if Terry and Whren might be extended to reach some actual parking violations, such an extension should not justify the seizure of passengers here. The police did not reasonably suspect a parking violation when they pounced here.
The police relied on a Wisconsin statute that provides:
No person shall stop or leave any vehicle standing in any of the following places except temporarily for the purpose of and while actually engaged in loading or unloading or in receiving or discharging passengers and while the vehicle is attended by a licensed operator so that it may promptly be moved in case of an emergency or to avoid obstruction of traffic:
(1) In a loading zone.
(2) In an alley in a business district.
(3) Within 10 feet of a fire hydrant, unless a greater distance is indicated by an official traffic sign.
(4) Within 4 feet of the entrance to an alley or a private road or driveway.
(3) Closer than 15 feet to the near limits of a cross-walk.
(6) Upon any portion of a highway where and at the time when parking is prohibited, limited or restricted by official traffic signs..
Wis. Stat. § 346.53.
The law makes clear that the car and passengers the police seized in this case could stand lawfully exactly where they were if the car was there “temporarily for *415 the purpose of and while actually engaged in loading or unloading or in receiving or discharging passengers and while the vehicle is attended by a licensed operator.” That was what the police saw here: the driver had gone into the liquor store, and the motor was running.
Without more, a car stopped in front of a store with its motor running is simply not suspicious. Given the sensible statutory proviso for cars that are loading and unloading, the police here could not decide that this seizure was reasonably justified in the few seconds they took from spotting the car until they swooped in to seize it and its passengers.
Yet the majority treats what the police saw as suspicious enough to justify the seizure. That rationale overlooks the fact that the statute does not require the driver to “occupy” the car while loading or unloading. It requires only that the car be “attended” by a driver so it can be moved if needed. A lone driver making deliveries and pick-ups will not always be in the vehicle but may “attend” it for these purposes.
To avoid the logic of the provision for loading and unloading, the majority cites cases from quite different contexts where police officers who receive conflicting information may make arrests and “leave to the judicial process the question whether a defense applies.” Op. at 409, citing Baker v. McCollan, 443 U.S. 137, 145-46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (arrest based on mistaken identity), and other arrest cases, such as Hurem v. Tavares, 793 F.3d 742 (7th Cir.2015) (trespass arrest of apartment tenant who could not produce copy of lease), and Askew v. Chicago, 440 F.3d 894 (7th Cir.2006) (arrest for threat based on eyewitness accounts).
That reasoning bears no practical relationship to what happened on the streets of Milwaukee in this case. No police officer could expect to keep his job if he treated a standing car as worthy of a Terry stop, leaving the driver to explain in court that he had just stopped to pick up a package or passenger. Imagine that the police tried that approach in Milwaukee’s affluent east side. Citizens would be up in arms, and rightly so.
What made this car different? What made the officers decide instantly to swoop in on this one? On this record, the only explanation is the neighborhood, and the correlation with race is obvious. If these outrageous police tactics could ever be justified based on nothing more than a real parking violation, and they should not, they were not justified in this case.
The majority responds that none of this really matters. The theory is that the unreasonable police tactics did not actually cause the discovery of the firearm in Johnson’s possession. The majority speculates that a police officer could have walked up to the parked car and seen the firearm, prompting the more intrusive removal and handcuffing of all passengers and the search of the car’s interior, where the firearm was found.
This rationale runs into at least three problems. First, it was not the district court’s or the government’s rationale. Second, the district court’s factual findings do not support it. The district court correctly found that the car’s passengers were seized the moment the police cars stopped next to their car and shined their lights in. No passenger at that point could have thought he was free to just walk away. There is no finding that Johnson’s “furtive movements” occurred before the unreasonable seizure of the car. We should base our decision on what the police here actually did, not on an imaginative hypothesis.
Third, the majority’s version is not even a plausible account of what happened. We *416 must accept for purposes of appeal the district court’s decision to credit Officer Conway’s testimony about seeing Johnson’s furtive movements. But surely there is no doubt that those movements were reactions to the unreasonable seizure by the police: the sudden presence of police and lights surrounding the parked car. The police are not allowed to violate the Fourth Amendment and then seize the evidence they discover as a person reacts to their violation.
Finally, the majority’s suggestions that damages for excessive force or for racial discrimination might be better remedies than exclusion of evidence in the criminal prosecution miss the point of defendant’s appeal. Assuming the majority’s general premise is correct, Johnson is not claiming that the officers used excessive force in violation of the Fourth Amendment. Nor has he tried to prove racial motivation in the seizure of the car’s passengers. His claim, which I think is valid, is that the seizure of the car’s passengers was unreasonable in violation of the Fourth Amendment. For that claim, the correct remedy is exclusion of the evidence obtained by means of the unconstitutional seizure, which can offer meaningful deterrence of the violation. See generally Herring v. United States, 555 U.S. 135, 140-45, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). In addition, exclusion serves the purpose of reassuring the people who are potential victims of unlawful police conduct that the courts will not allow law enforcement agencies to profit from their lawless behavior. Id. at 151-53, 129 S.Ct. 695 (Ginsburg, J., dissenting).
For all these reasons, we should reverse the denial of Johnson’s motion to suppress. Terry and Whren should not be extended to authorize seizure of a car’s passengers for suspected parking violations. And even if those doctrines could be thus extended in some situations, the officers here had no reasonable basis to believe this car was parked illegally. I respectfully dissent.

. A violation as minor as a blown light bulb for a license plate can be used to justify such intrusions. E.g., United States v. Harrison, 606 F.3d 42, 45 (2d Cir.2010); United States v. Smith, 86 Fed.Appx. 966 (7th Cir.2004). We regularly see cases where a police officer is instructed to conduct a traffic stop on a particular suspect's vehicle, which can be done virtually at will. This is not a new observation. The future Justice Jackson said *413 in 1940: "We know that no local police force can strictly enforce the traffic laws, or it would arrest half the driving population on any given morning.” R. Jackson, The Federal Prosecutor, Address Delivered at the Second Annual Conference of United States Attorneys, April 1, 1940, quoted in Morrison v. Olson, 487 U.S. 654, 727-28, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988) (Scalia, J., dissenting).